[S. F. No. 15611. In Bank.—April 17, 1937.]

SAMUEL J. JONES, Respondent, v. BRUCE H. RUTHERFORD et al., Defendants; CRYSTAL RUTHERFORD, Appellant.

Norman S. Menifee for Appellant.

William P. Hubbard for Respondent.

SEAWELL, J.—Defendant Crystal Rutherford appeals from a judgment that plaintiff Samuel J. Jones have and recover 37½ shares of the corporate stock of San Mateo Greyhound Breeders' Association. Appellant claims to be the owner of said stock by virtue of a gift from her husband, Bruce H. Rutherford. The corporation commissioner had given his consent to the release of said stock by defendant California Pacific Title and Trust Company, escrow holder, but it retained possession because of the conflicting claims thereto. Over the opposition of plaintiff the action was tried by a jury, which returned a general verdict for plaintiff upon which the judgment was entered. The court thereafter

denied the motion of defendant Crystal Rutherford for a new trial.

It appears from the record that Bruce Rutherford, husband of appellant, and Samuel Jones, plaintiff herein and an attorney at law, became interested in promoting a dog racing track near San Francisco. Plaintiff claims the stock which is the subject of this action by virtue of an agreement which he testified was made between him and Rutherford for equal division of whatever they should receive for promoting the dog racing track. Neither Rutherford nor Jones had funds to invest in the enterprise, but they planned to interest others in it.

An option on land in San Mateo County suitable for a dog racing track was taken in the name of Rutherford. One Martin and others associated with him were also interested in developing a dog racing enterprise. Rutherford and Jones were brought together with the Martin interests by one Haas. It was agreed that they should work together. Rutherford and Jones were to take steps to procure the incorporation of the town of Bayshore, in which the race track was to be located, and to obtain a permit from said town for the operation of the track. Martin and his associates were in contact with P. P. O'Connor and others who were in a position to finance the enterprise, and who subsequently incorporated the San Mateo Greyhound Breeders' Association. Thereafter the option on the race track site and the permit were assigned to the attorney for the association, which developed the property and operated a race track thereon.

In a contract of November 3, 1932, between Martin and O'Connor, to which Rutherford assented in writing, it was agreed that for services rendered five per cent of the stock of the corporation to be formed should be issued to Martin and five per cent to Rutherford. Rutherford subsequently gave directions that 37 of the 75 shares which constituted his five per cent should be issued to one Collins, and 38 shares to his wife, the appellant herein. The shares issued in the name of the wife, which she claims as a gift from her husband, are the subject of the instant action. The jury and the trial court upheld plaintiff's contention that it had been agreed between him and Rutherford that money and property received for their promotional services should be divided equally between them, and by virtue thereof plaintiff was entitled to the stock which he claims herein.

Upon the trial plaintiff's testimony was corroborated by a number of disinterested witnesses, who testified to unequivocal statements made by Bruce Rutherford that he and plaintiff were to share equally in whatever was realized from their promotional activities.

Bruce Rutherford denied the existence of any such agreement. According to him, he employed Jones as his attorney to render legal services in connection with the promotion, on the understanding that Jones should receive $1,000 for such services, to be paid from funds to be derived from those who should be interested in the undertaking, and this sum had been paid.

In an agreement drawn by Jones and executed in September, 1932, by Martin and Rutherford in the presence of Jones, it was provided that "legal expenses" of the incorporation of the town, not to exceed $1,000, should be paid by Martin. Plaintiff Jones was not a party to nor mentioned in said agreement. This agreement was superseded by the contract of November 3, 1932. Martin did in fact make payments totaling less than $1,000 to Rutherford and Jones at various times, which, according to Jones, were always divided equally between them. ■ Appellant argues that if Jones' testimony of equal division is accepted, then it appears that he has been guilty of splitting a fee for legal services with Rutherford, a layman, which is contrary to public policy. It clearly appears that the promotional activities of Jones were both of a legal and nonlegal character. A large part of the activity of both men in the incorporation of the town, referred to in the agreement as "legal services", was not strictly legal work, but consisted in persuading the residents of the district that the town should be incorporated, in overcoming, through mass meetings and interviews, the opposition to the race track, and in other nonlegal activity. By an equal division of whatever was received Rutherford was compensated for his promotional services of a nonlegal character.

Appellant argues that if it was intended that Jones should have an interest in the stock which was the subject of the written agreements, Jones, who was a lawyer and had drafted the first agreement and was present when both agreements were executed, would have insisted that express provision be made for him. It appears that other persons than Martin were interested in the five per cent of stock which Martin

was to receive under the instrument of November 3, 1932, yet such persons were not named or referred to in the instrument.

Appellant also points to testimony of residents of the town of Bayshore that Jones was appointed city attorney of Bayshore at a salary of $25 a month upon his representation that he was not financially interested in the dog racing enterprise. Jones was unwilling to deny that he had made such statements. The court instructed the jury to take this evidence into consideration in passing on the credibility of Jones' testimony that an agreement for equal division existed. It was the province of the jury and the trial court to resolve conflicts in the evidence. As an appellate court we cannot reverse the judgment where there is substantial evidence to support it. The testimony of plaintiff Jones himself, and of the witnesses who testified on his behalf as to Rutherford's declarations that they were to share equally, sustains the judgment.

If in fact Jones indicated to the townspeople that he was not financially interested in the dog racing enterprise when he was to be a stockholder, his conduct was wrongful as against them. But this is a collateral matter. It was not shown to be part of the contract between Jones and Rutherford that Jones should mislead the residents of Bayshore in any respect. Rutherford and his wife, as donee of the stock, cannot urge Jones' conduct in this connection to defeat Rutherford's liability on his agreement with Jones for equal division of the stock.

If there was any error in the admission of evidence, as contended by appellant, it was not sufficiently prejudicial to require a reversal. We find no error in the giving or refusing to give instructions.

The judgment is affirmed.

Thompson, J., Shenk, J., Edmonds, J., Curtis, J., and Langdon, J., concurred.

Rehearing denied.